**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

GERALD HAMILTON                                                                                          PLAINTIFF

v.                                                    No. 4:12CV00670 JLH

ORTHO CLINICAL DIAGNOSTICS,
a Johnson & Johnson Company; and
ORTHO CLINICAL DIAGNOSTICS, INC.                                               DEFENDANTS

**OPINION AND ORDER**

Gerald Hamilton brings this employment-discrimination action under the Americans with Disabilities Act,[1] the Family and Medical Leave Act,[2] the Age Discrimination in Employment Act,[3] and the Arkansas Civil Rights Act[4] against Ortho Clinical Diagnostics, a Johnson & Johnson Company, and Ortho Clinical Diagnostics, Inc. Hamilton alleges that Ortho Clinical terminated his employment after taking medical leave for a work-related back injury. Ortho Clinical has answered and asserted various affirmative defenses. Hamilton has filed a motion for partial summary judgment on his failure-to-accommodate and wrongful-discharge claims, on the elements of protected activity and adverse action of his retaliation claims, and on Ortho Clinical's affirmative defenses of exhaustion of remedies, direct threat, and undue burden. Document #50. Ortho Clinical has filed a motion for summary judgment, Document #72, and a motion for partial summary judgment on Hamilton's claim for back pay damages. Document #74. Hamilton has also filed a motion to strike portions of Ortho Clinical's response to his motion for summary judgment.

---

[1] 42 U.S.C. § 12101, *et seq.*

[2] 29 U.S.C. § 2601, *et seq.*

[3] 29 U.S.C. § 621, *et seq.*

[4] Ark. Code Ann. § 16-123-101, *et seq.*

Document #77. As explained below, Hamilton's motion for summary judgment is denied. Ortho Clinical's motion for summary judgment is granted in part and denied in part, and its motion for partial summary judgment on the issue of back pay damages is denied. Hamilton's motion to strike is denied as moot.

**I.**

Hamilton was employed for 40 years by Ortho Clinical as a field engineer, a job that involves maintaining, repairing, and installing medical equipment. Hamilton's job description states that a field engineer "[m]ust be able to routinely handle objects weighing up to 25 lbs and on occasion may be expected to lift objects weighing up to 50 lbs." Document #53-3 at 4. Ortho Clinical conducted annual training of field engineers in early 2011. During that training, field engineers were instructed not to lift in excess of 51 pounds. Document #56-2 at 21.

In May 2011, Hamilton suffered a back injury while on the job. Beginning May 16, 2011. he took FMLA and short-term disability leave from work. Hamilton's supervisor, Mike Mazulo, submitted a job analysis worksheet dated May 23, 2011, to Reed Group[5] showing that Hamilton's job required him to frequently lift or carry items weighing 1 to 25 pounds, to occasionally lift or carry items weighing 26 to 50 pounds, and to seldom lift or carry items weighing 51 to 100 pounds. *See* Document #53-5.

In September 2011, Hamilton applied for long-term disability benefits. Hamilton also underwent a functional-capacity physical examination. Based on that examination, on October 5, 2011, Hamilton's physician, Dr. Wayne Bruffett, released him to return to work with a permanent medium "physical demand level" restriction of lifting only 21 to 50 pounds occasionally, 11 to 25

---

[5] Reed Group is the administrator for Johnson & Johnson's Return to Wellness Program.

pounds frequently, and 1-10 pounds constantly. *See* Documents #53-1 at 2, #54-12. A copy of the examination report and Dr. Bruffett's note was provided to Deborah Petrosky, Ortho Clinical's Occupational Health Nurse. Hamilton then requested to return to work. Ortho Clinical asked Hamilton to provide a more detailed doctor's note. Hamilton requested and eventually obtained another doctor's note, which he provided to Ortho Clinical. *See* Document #53-2.

On November 16, 2011, Mazulo determined that he would not be able to approve Hamilton's returning to work with Dr. Bruffett's restrictions. *See* Documents #53-15, #55-4 at 14. The next day, Petrosky, Mazulo, Patrick Rigby, and human resources representative Elizabeth Felice had a phone conference in which it was determined that Hamilton's 50-pound lifting restriction could not be accommodated. *See* Documents #57-3 at 26, #55-4 at 15. Consequently, Hamilton's employment was terminated on December 5, 2012. On December 7, Ortho Clinical was informed that Hamilton was being denied long-term disability benefits because lifting in excess of 50 pounds was not an essential requirement of his job. Beginning December 8, numerous Ortho Clinical employees engaged in efforts to get Hamilton's employment reinstated. *See* Document #53-8. On December 9, Mazulo changed Hamilton's job analysis worksheet, among other things, to indicate that Hamilton's job required him to frequently lift or carry items weighing up to 50 pounds and occasionally required lifting or carrying items weighing 50 to 100 pounds. *See* Documents #53-4, #53-18. However, a memorandum from Mazulo to Hamilton dated January 10, 2012 stated,

> On 12/20/11, we were notified that your application for long term disability (LTD) was denied. Based on our correspondence with Occupational Health, you can only return to work provided certain restrictions are in place. Specifically, you cannot lift weights of 50 lbs.
>
> The Field Engineer role requires employees to operate independently within their geographic territories. The role also has specific physical requirements, one of which is the ability to lift 50 lbs. We had discussion with you to explore ways to accommodate these restrictions, while allowing you to function independently within

your territory, and no sustainable solutions were identified. As a result, we cannot accommodate the restrictions indicated by your physician and will terminate your employment, effective 01/10/12.

Document #53-19. Hamilton disputes that Ortho Clinical discussed possible accommodations with him, that there were not sustainable solutions, and that he could not lift 50 pounds.

On February 14, 2012, Hamilton filed a charge with the EEOC. On July 23, 2012, the EEOC issued Hamilton a right-to-sue letter, and on September 10, 2012, he filed this action. A year and a half after his termination, on August 5, 2013, Ortho Clinical unconditionally reinstated Hamilton to an equivalent job with the same salary as when his employment ended "because, among other reasons, it learned during the litigation of this case that lifting over 50 pounds was not an essential function of [Hamilton's] job."[6] Document #26 at 1 ¶ 1. On October 10, 2013, Ortho Clinical sent Hamilton a check in the amount of $186,879.81 for back pay he lost from November 14, 2011 through August 5, 2013. Hamilton declined the check and returned it to Ortho Clinical.

## II.

A court should grant summary judgment if the evidence demonstrates that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The moving party bears the initial burden of demonstrating the absence of a genuine dispute for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). If the moving party meets that burden, the nonmoving party must come forward with specific facts that establish a genuine dispute of material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986); *Torgerson*

---

[6] Ortho Clinical has contradicted this statement in a subsequent filing, claiming that "it is disputed whether [lifting over 50 pounds] was an essential function of the job." Document #70 at 4 ¶ 9.

*v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). A genuine dispute of material fact is presented only if the evidence is sufficient to allow a reasonable jury to return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). The court must view the evidence in the light most favorable to the nonmoving party and must give that party the benefit of all reasonable inferences that can be drawn from the record. *Spencer v. Jackson Cnty. Mo.*, 738 F.3d 907, 911 (8th Cir. 2013). If the nonmoving party fails to present evidence sufficient to establish an essential element of a claim on which that party bears the burden of proof, then the moving party is entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 322-23, 106 S. Ct. at 2552.

### III.

Hamilton must either provide direct evidence supporting his ADA, ADEA, and FMLA claims or else create an inference of discrimination using the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). See *Phillips v. Mathews*, 547 F.3d 905, 912 (8th Cir. 2008) (FMLA); *Stewart v. Indep. Sch. Dist. No. 196*, 481 F.3d 1034, 1042-43 (8th Cir. 2007) (ADA and ADEA). "[D]irect evidence is evidence showing a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the adverse employment action." *Libel v. Adventure Lands of Am., Inc.*, 482 F.3d 1028, 1034 (8th Cir. 2007) (quotation and citation omitted).

**A.    ADA and ACRA Retaliation, FMLA Discrimination, and ADEA Discrimination Claims**

Hamilton has asserted state and federal claims of retaliation for taking FMLA and disability leave from work as well as a claim for age discrimination. Ortho Clinical first argues that Hamilton has failed to show that Ortho Clinical was motivated to terminate him as a result of his taking FMLA

or disability leave. Although the Eighth Circuit has long used language of "retaliation" to refer to FMLA claims substantially similar to that asserted by Hamilton here, under the categories articulated in *Pulczinski v. Trinity Structural Towers, Inc.*, 691 F.3d 996, 1006 (8th Cir. 2012), Hamilton's FMLA claim should be styled a "discrimination" claim. *See id.* (explaining that an FMLA discrimination claim alleges "that after the employee exercised his statutory rights, the employer discriminated against him in the terms and conditions of employment."). A plaintiff who brings an FMLA discrimination claim or an ADA retaliation claim must show, among other things, "a causal connection between h[is] exercise of rights and the adverse employment action." *Hager v. Arkansas Dep't of Health*, 735 F.3d 1009, 1016 (8th Cir. 2013) (quotation and citation omitted); *see Lors v. Dean*, 746 F.3d 857, 867 (8th Cir. 2014). "Evidence that gives rise to an inference of a retaliatory motive on the part of the employer is sufficient to establish a causal link." *Hite v. Vermeer Mfg. Co.*, 446 F.3d 858, 866 (8th Cir. 2006).

Ortho Clinical argues that Hamilton's termination was not temporally proximate to his taking of FMLA or disability leave because Hamilton's FMLA leave concluded in August 2011 and his disability leave concluded on October 5, 2011, but he was not terminated until January 2012. If the time is measured between the end of his disability leave to the date that Hamilton's termination was first processed, on December 5, 2010, there is a span of exactly two months from the end of his disability leave and roughly four months from the end of his FMLA leave. "In order for temporal proximity alone to be sufficient, 'the temporal proximity must be very close.'" *Sisk v. Picture People, Inc.*, 669 F.3d 896, 900 (8th Cir. 2012) (quoting *Hite*, 446 F.3d at 866). "The inference vanishes altogether when the time gap between the protected activity and the adverse employment action is measured in months." *Tyler v. Univ. of Ark. Bd. of Trs.*, 628 F.3d 980, 986 (8th Cir. 2011). The Eighth Circuit has "held that an interval as brief as two months did not show causation for

purposes of establishing a retaliation claim and that a two-week interval was 'sufficient, but barely so." *Id.* (quotation and citation omitted). "'Generally, more than a temporal connection between the protected conduct and the adverse employment action is required to present a genuine factual issue on retaliation.'" *Wierman v. Casey's Gen. Stores*, 638 F.3d 984, 1001 (8th Cir. 2011) (quoting *Kiel v. Select Artificials, Inc.,* 169 F.3d 1131, 1136 (8th Cir.1999) (en banc)); *see also Arraleh v. Cnty. of Ramsey*, 461 F.3d 967, 977 (8th Cir. 2006). Evidence of an employer's discriminatory comments, of escalating adverse action, or temporal proximity between the exercise of rights and the adverse employment action may support a finding of a causal link. *Hite*, 446 F.3d at 866.

Here, Hamilton has not alleged that he experienced escalating adverse action leading up to his termination, or that any Ortho Clinical employee indicated that his taking FMLA or disability leave put his job in jeopardy. And the timing of his termination is not "very close" to the protected activities. *Sisk*, 669 F.3d at 900. Consequently, Hamilton has not shown a causal connection between his termination and the exercise of his rights under the FMLA, the ADA, or the ACRA.[7]

Finally, Ortho Clinical also argues that Hamilton cannot show a causal connection between his age and his termination. The ADEA requires a plaintiff to show that age discrimination was the but-for cause of the adverse employment action. *Olsen v. Capital Region Med. Ctr.*, 713 F.3d 1149, 1155 (8th Cir. 2013). Hamilton has not presented evidence to show that age discrimination was a but-for cause of his termination.

Viewing the evidence in the light most favorable to Hamilton, Hamilton presents no direct evidence of discriminatory animus, and he otherwise fails to make a prima facie case on these claims. Consequently, they cannot survive summary judgment.

---

[7] Hamilton's ACRA retaliation claim is analyzed under the same principles as the ADA. *See Duty v. Norton-Alcoa Proppants*, 293 F.3d 481, 490 (8th Cir. 2002).

**B.     ADA and ACRA Wrongful-Discharge and Failure-to-Accommodate Claims**

Hamilton has also asserted wrongful-discharge and failure-to-accommodate claims under the ADA and the ACRA.[8] "In order to obtain relief under the ADA, as amended in 2008, a plaintiff must show (1) she is a 'qualified individual' under the ADA, (2) she suffered 'discriminat[ion]' as the term is defined by the ADA, and (3) the 'discriminat[ion]' was 'bas[ed]' on 'disability' as defined by the ADA." *Brown v. City of Jacksonville*, 711 F.3d 883, 888 (8th Cir. 2013) (citing 42 U.S.C. § 12112(a)) (footnote omitted) (alterations in *Brown*). The ADA defines "qualified individual" as "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). Ortho Clinical has represented to this Court that "it learned during the litigation of this case that lifting over 50 pounds was not an essential function of [Hamilton's] job," Document #26 at 1 ¶ 1, and Ortho Clinical does not argue that Hamilton is otherwise unable to perform the essential functions of his position. Therefore, Hamilton is a qualified individual under the ADA.

Under the ADA, "discriminat[ion] against a qualified individual on the basis of disability" includes "discharge of employees," 42 U.S.C. § 12112(a), as well as "not making reasonable accommodations to the known physical . . . limitations of an otherwise qualified individual with a disability who is an . . . employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." *Id.* § 12112(b)(5)(A). An employer is required to accommodate only persons with an impairment or a record of impairment that substantially limits a major life activity. *Id.* § 12201(h).

---

[8] Ortho Clinical argues that a failure-to-accommodate claim may not be asserted under the ACRA. In *Battle v. United Parcel Serv., Inc.*, 438 F.3d 856, 860-64 (8th Cir. 2006), however, the Eighth Circuit affirmed a jury verdict on an ACRA failure-to-accommodate claim, noting that claims under the ADA and the ACRA are analyzed under similar principles.

Viewing the evidence in the light most favorable to Hamilton, he has not shown that his inability to lift more than 50 pounds substantially limits a major life activity, so he fails to make a prima facie case on his ADA and ACRA failure-to-accommodate claims.

Under the amended 2008 definition of "disability," however, "the ADA applies to a person who 'has been subjected to [adverse employment] action . . . under [the ADA] because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." *Brown*, 711 F.3d at 889 (8th Cir. 2013) (citing 42 U.S.C. § 12102(3)(A)) (emphases omitted) (alterations in *Brown*). In other words, a person who is terminated because he has a physical impairment has a claim for intentional discrimination under the ADA even if his impairment does not substantially limit a major life activity. Mazulo's January 10 memorandum to Hamilton stated that the specific reason for his termination was that Hamilton "cannot lift weights of 50 lbs." Document #53-19. Under the 2008 amendments, this is "evidence showing a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the adverse employment action." *Libel*, 482 F.3d at 1034.

Viewing the evidence in the light most favorable to Hamilton, he has presented direct evidence that he was wrongfully discharged on the basis of a disability, as that term is defined in the 2008 amendment to the ADA. Consequently, his ADA and ACRA wrongful-discharge claims survive summary judgment.

**C.      Ortho Clinical's Affirmative Defenses**

Ortho Clinical has asserted the affirmative defenses of failure to exhaust administrative remedies, undue burden, and direct threat. Ortho Clinical has agreed to dismiss its failure-to-exhaust defense. Document #70 at 3 ¶ 8. It has also agreed to dismiss its undue-burden defense except to the extent that Hamilton argues that Ortho Clinical should have required or allowed employees of its customers to assist Hamilton in lifting. *Id.* at 4 ¶ 10. Undue burden is an affirmative defense to Hamilton's failure-to-accommodate claim. *See Gorman v. Bartch*, 152 F.3d 907, 912 (8th Cir. 1998); *see also Kutrip v. City of St. Louis*, 329 F. App'x 683, 685 (8th Cir. 2009) ("ADA defendants may raise affirmative defense that requested accommodation would constitute undue burden requiring fundamental alteration in nature of program, service, or activity."). Because Hamilton's failure-to-accommodate claim cannot survive summary judgment, Ortho Clinical's undue-burden defense is moot and therefore dismissed.

"A 'direct threat' is defined as 'a significant risk to the health or safety of others that cannot be eliminated by reasonable accommodation.'" *E.E.O.C. v. Wal-Mart Stores, Inc.*, 477 F.3d 561, 571 (8th Cir. 2007) (quoting 42 U.S.C. § 12111(3)); *see also* 29 C.F.R. § 1630.2(r). Ortho Clinical argues that it could not reinstate an employee who refused to abide by his 50-pound lifting restriction because he would be a direct threat. Ortho Clinical maintains that "Hamilton told [Rigby and Mazulo] that he would not abide by his 50 lb lifting restriction if he were faced with lifting over 50 lbs in the field. Nor would he call a co-worker for help. Rather, he would get the job done." Document #70 at 4 ¶ 9. Hamilton replies that "I told them that I would get the job done but I still would not lift over 50 pounds. If I needed anything over 50 pounds, I'd get assistance." Document #81 at 2. Based on this conflicting evidence, Ortho Clinical has established a jury question on its direct-threat defense to Hamilton's wrongful-discharge claim.

Because Hamilton's motion for partial summary judgment on this affirmative defense is denied, the Court declines to grant Hamilton's motion for partial summary judgment on the elements that he must prove to establish an ADA claim. *See Roberts v. Browning*, 610 F.2d 528, 536 (8th Cir. 1979) ("[E]ven if a district judge feels that summary judgment in a given case is technically proper, sound judicial policy and the proper exercise of judicial discretion may prompt him to Deny the motion and permit the case to be developed fully at trial. The ultimate legal rights of the movant can always be protected in the course of or even after trial."); *Andrew v. Clark*, 561 F.3d 261, 271 (4th Cir. 2009); *Taylor v. Rederi A/S Volo*, 374 F.2d 545, 549 (3d Cir. 1967) ("It is further settled that the trial court may exercise its discretion in denying summary judgment where a part of an action may be ripe for summary judgment but it is intertwined with another claim that must be tried."); 10A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure § 2728, at 525-26 (3d ed. 1998) (collecting cases).

**D.     Hamilton's Motion to Strike**

Hamilton has filed a motion to strike portions of Ortho Clinical's summary judgment response, including its use of a job analysis worksheet to argue that lifting over 50 pounds is not an essential job function, and its use of Dr. Bruffett's testimony to argue that Hamilton does not have a disability. The Court has not relied on Ortho Clinical's challenged arguments in reaching its conclusions, and even if it had, the result would be unchanged. Therefore, Hamilton's motion to strike is moot.

### E.    Back Pay Damages

Ortho Clinical sent Hamilton a check in the amount of $186,879.81 for back pay he lost from November 14, 2011 through his reinstatement on August 5, 2013.  Hamilton did not accept the check.  Ortho Clinical argues that Hamilton had a duty to mitigate his damages and should now be prohibited from pursuing back pay damages at trial.  An employee's remedies for disability discrimination are defined by Title VII of the Civil Rights Act of 1964.  *Pedigo v. P.A.M. Transp., Inc.*, 60 F.3d 1300, 1301 (8th Cir. 1995) (citing 42 U.S.C. § 12117(a)).  "[A] claimant wrongfully discharged must use reasonable efforts to mitigate his damages."  *Fiedler v. Indianhead Truck Line, Inc.*, 670 F.2d 806, 809 (8th Cir. 1982).  However, the Eighth Circuit has held that an employee may pursue a claim for back pay at trial for the period spanning from his wrongful discharge to his reinstatement, even though he failed to accept his employer's previous offer of full back pay and benefits.  *See id.*

### CONCLUSION

For the reasons stated above, Hamilton's motion for partial summary judgment is denied.  Document #50.  Ortho Clinical's motion for summary judgment (Document #72) is granted in part and denied in part, and its motion for partial summary judgment on the issue of back pay damages (Document #74) is denied.  Finally, Hamilton's motion to strike is denied as moot.  Document #77.  The case will proceed to trial on Hamilton's ADA and ACRA wrongful-discharge claims.

IT IS SO ORDERED this 2nd day of July, 2014.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE